UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GREGORY PRICE,

            Plaintiff,

v.                                  **DECISION AND ORDER**
                                        14-CV-929S

J. LUDIKA,

            Defendant.

## I. INTRODUCTION

In this action, pro se Plaintiff Gregory Price alleges, pursuant to 42 U.S.C. § 1983, that Defendant James Ludtka[1] violated his First and Eighth Amendment rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Presently before this Court is Ludtka's Motion for Summary Judgment. (Docket No. 5.) Despite being warned about the consequences of his failure to do so, Plaintiff has not responded to Ludtka's motion. For the following reasons, Ludtka's motion is granted in its entirety.

## II. BACKGROUND

Because Plaintiff failed to respond to Ludtka's motion, all facts set forth in Ludtka's Rule 56 Statement are deemed admitted. See Fed. R. Civ. P. 56 (e)(2); Local Rule 56 (a)(2).

Plaintiff is an inmate who was housed at the Orleans Correctional Facility during the time period relevant to the complaint.

Plaintiff alleges that on October 18, 2014, Ludtka retaliated against him by filing a false misbehavior report claiming that he refused to return his food tray. (Defendant's

---
[1] Plaintiff misidentified Defendant James Ludtka as "J. Ludika."

1

Rule 56 Statement of Undisputed Facts ("Defendant's Statement"), ¶ 2.) Plaintiff alleges that Ludtka retaliated against him because he complained to "higher officials" about Ludtka's "inappropriate conduct." (Defendant's Statement, ¶ 2.) Plaintiff asserts that as a result of Ludtka's actions, he was placed on a restricted diet of "food loaf." (Defendant's Statement, ¶ 4.) He further alleges that the restricted diet was inadequate to maintain his weight and made him ill. (Defendant's Statement, ¶ 4.)

Plaintiff initiated this action on November 3, 2014, with the filing of his complaint and Motion for Leave to Proceed *in forma pauperis*. (Docket No. 1.) This Court granted Plaintiff's Motion for Leave to Proceed *in forma pauperis* on May 14, 2015. (Docket No. 3.) Additionally, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court screened the complaint and dismissed Plaintiff's claims against the other named defendants. (Defendant's Statement, ¶ 6; Docket No. 3.) Accordingly, only Plaintiff's claims against Ludtka remain.

Ludtka filed the instant Motion for Summary Judgment on July 16, 2015, requesting that this Court dismiss Plaintiff's complaint for failure to exhaust administrative remedies. (Docket No. 5.)

### III. DISCUSSION

Despite numerous opportunities to do so, Plaintiff has not responded to Ludtka's motion, nor has he at any time submitted evidentiary support for his claims. Plaintiff alleges that Ludtka violated his First and Eighth Amendment rights. Ludtka does not deny or admit the truthfulness of Plaintiff's allegations, but rather, maintains that Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

**A.     Dismissal for Failure to Prosecute**

As an initial matter, this case warrants dismissal due to Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

Where the defendant has not moved under Rule 41(b), a court may nonetheless dismiss a case *sua sponte*.  Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed. 2d 734 (1982); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982).  In Link, the Supreme Court noted that "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link, 370 U.S. at 630-31.

Rule 41(b) does not define what constitutes failure to prosecute.  But the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." Lyell Theatre Corp., 682 F.2d at 42.  Dismissal pursuant to Rule 41(b) falls within the court's discretion.  See id. at 42-43 ("the scope of review of an order of dismissal is confined

solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." Harding v. Fed. Reserve Bank, 707 F.2d 46, 50 (2d Cir. 1983) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)); see also Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should be granted only "when the circumstances are sufficiently extreme." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 487 (2d Cir. 1994)).

The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004); Nita, 16 F.3d at 485; Feurtado v. City of New York, 225 F.R.D. 474, 477 (S.D.N.Y. 2004) (quoting Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)). While a district court is not required to expressly discuss these factors on the record, "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." Lucas, 84 F.3d at

535. Finally, in examining the above factors, no single factor is to be considered dispositive. See United States ex rel. Drake, 375 F.3d at 254.

In the present case, these factors weigh in favor of dismissal. Specifically, (1) Plaintiff has caused a delay of significant duration in this litigation, as the proceedings have been halted for more than six months as a result of his inaction, see Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 177 (2d Cir. 2008) (upholding dismissal where pro se party caused seven-month delay); (2) this Court has twice directed Plaintiff to respond to Ludtka's motion, has twice warned Plaintiff that his failure to respond to Ludtka's motion could result in dismissal of this case (Docket Nos. 8, 10), and upon learning that Plaintiff had been released from custody, this Court twice directed Plaintiff to provide his current address, which Plaintiff never did (Docket Nos. 8, 10); (3) Ludtka is inherently prejudiced by further delay of this action; (4) by affording Plaintiff ample time to prosecute his claims, this Court carefully balanced the need to alleviate court calendar congestion against Plaintiff's right to pursue his claims; and (5) no lesser sanction would be appropriate as Plaintiff's repeated failure to comply with this Court's multiple warnings of the possibility of dismissal demonstrate that lesser sanctions would be ineffective, see Ruzsa, 520 F.3d at 178 (holding that "it is . . . unclear that a 'lesser sanction' would have proved effective" in light of plaintiff's failure to respond to district court's notice). From these facts, this Court finds that Plaintiff had ample opportunity to pursue his claims, but chose not to do so. Dismissal for failure to prosecute is therefore warranted. Nonetheless, this Court addresses Ludtka's motion on the merits.

**B.     Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986);

D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

By rule, judgment may also be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate. Fed. R. Civ. P. 56 (e)(3). This district's Local Rules provide for similar relief: a nonmoving party's failure to file and serve an answering memorandum or affidavit may constitute grounds for resolving the motion against it. See Local Rule 7 (a)(2)(A) and (a)(3).

But failure to oppose or respond to a motion for summary judgment standing alone does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Amaker, 274 F.3d at 681. Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Vt. Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**C.      42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's claims are grounded in the First and Eighth Amendments.

**D.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a).  The Supreme Court has made clear that exhaustion of remedies is mandatory under the PLRA.  See Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 918-19, 166 L.Ed.2d 798 (2010) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002)); Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ("Exhaustion is no longer left to the discretion of the

district court, but is mandatory.") (citing Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001)).  Moreover, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 516.

"A court may not dismiss for failure to exhaust administrative remedies unless . . . [it] determines that such remedies are available."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004).  A plaintiff prison inmate must "exhaust all 'available' administrative remedies, not just those that meet federal standards . . . ." Woodford, 548 U.S. at 85. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedures . . . ." Id. at 90.  To determine whether an administrative remedy is available, courts "should be careful to look at the applicable set of grievance procedures, whether city, state or federal." Abney, 380 F.3d at 663 (quoting Mojas v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)).  "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'"  Abney, 380 F.3d at 667 (quoting Booth, 532 U.S. at 738).  Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements.  See Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999).

A plaintiff prison inmate is "not required to specially plead or demonstrate exhaustion in [his complaint]," but rather, the failure to exhaust administrative remedies must be raised as an affirmative defense.  Bock, 549 U.S. at 216.  Because failure to

exhaust is an affirmative defense, Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004), defendants bear the initial burden of establishing, by pointing to "legally sufficient source[s]" such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.  Mojias, 351 F.3d at 610; see also Snider, 199 F.3d at 114.

If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors rendered a nominally available procedure unavailable as a matter of fact.  See Hemphill v. New York, 380 F.3d at 680, 687–88 (2d Cir. 2004).  The Second Circuit has recognized that while the exhaustion requirement is mandatory, three exceptions exist. A prisoner's failure to comply with the exhaustion requirement is justified "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

As an initial matter, Ludtka has identified specific statutory regulations showing that administrative remedies were available to Plaintiff at the time the events transpired in the county court holding facility.  (Defendant's Statement, ¶ 7.)  Pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5, an inmate must comply with the following procedures:

> First, the prisoner files a grievance with the Inmate Grievance Resolution Committee.  Second, the prisoner may appeal an adverse IGRC decision to the facility

> superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee.

Bennett v. Wesley, No. 11 CIV. 8715 JMF, 2013 WL 1798001, at *4 (S.D.N.Y. Apr. 29, 2013) (internal citations omitted). Thus, "[a] prisoner incarcerated by DOC[C]S must exhaust all of the steps of the Inmate Grievance Resolution Program ('IGRP') before bringing an action in [ ] Court." Id.; see also Dabney v. Pegano, 604 F. App'x 1, 4 (2d Cir. 2015) ("[F]ailure to comply with the [Internal Grievance Program's] requirement that prisoners appeal their grievances to the [Central Office Review Committee] means that he did not properly exhaust his administrative remedies."); Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.") Accordingly, Ludtka has demonstrated the availability of N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5, a legally sufficient source supplying a mandatory grievance process.

Ludtka also submitted the Declaration of Jeffery Hale, the Assistant Director of the Internal Grievance Program (IGP) for DOCCS, whose office is the custodian of the records maintained by the Central Office Review Committee (CORC). (Declaration of Hale, ¶ 1.) Hale relates that his search of the records maintained by the CORC, which renders final administrative decisions under DOCCS's IGP, revealed no record of appeal filed by Plaintiff while he was within the care, custody, and control of the county prison. (Declaration of Hale, ¶ 4, Ex. A.) This Court also notes that Plaintiff filed this action less than three weeks after the alleged incident in the county prison occurred, which is likely insufficient time to complete administrative exhaustion.

In the face of this evidence, Plaintiff fails to demonstrate that he either exhausted his administrative remedies or was in some way prevented from doing so.  In fact, Plaintiff has not communicated with this Court at all since he filed his complaint more than two years ago.  Consequently, Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, Ludtka's Motion for Summary Judgment is granted, and in addition, Plaintiff's case is dismissed for failure to prosecute.

## V.  ORDERS

IT HEREBY IS ORDERED, Defendant's Motion for Summary Judgment (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's case is DISMISSED for failure to prosecute, pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to CLOSE this case.

SO ORDERED.


Dated:      March 3, 2016
            Buffalo, New York

                                                    /s/William M. Skretny
                                                   WILLIAM M.  SKRETNY
                                           United States District Judge